UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RONNELL PERKINS,<br><br>        Plaintiff,<br><br>v.<br><br>C. ANGULO, T. RAYBON; J. BERNAL,<br><br>        Defendants. | Case No.: 3:18-CV-00850-DMS-LL<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED**<br><br>**[ECF No. 8]** |

  This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California. For the following reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED.**

## PROCEDURAL BACKGROUND

  On May 2, 2018, Plaintiff Gary Ronnell Perkins, a state prisoner proceeding *pro se* and *in forma pauperis*, commenced this action under the Civil Rights Act, 42 U.S.C. § 1983, on behalf of himself and his "legal wife" Catherine Clark-Perkins against Defendants C. Angulo, T. Raybon, and J. Bernal. ECF No. 1 ("Compl."). Plaintiff alleges Defendants

denied his family visitation application as retaliation after Plaintiff filed a grievance against "staff" for their "dilatory tactics" in processing his application. See Compl. at ¶¶ 1-2, 13. As a result, Plaintiff alleges Defendants violated his First and Fourteenth Amendment rights. Id.

On May 2, 2018, Plaintiff filed a motion for leave to proceed *in forma pauperis*. ECF No. 2. On May 24, 2018, Plaintiff's motion was granted. ECF No. 3. In the Order, the Court dismissed Catherine Clark-Perkins from the suit, holding that Plaintiff, as a *pro se* plaintiff, lacked authority to represent the legal interests of another party. Id. at 2.

On August 3, 2018, Defendants filed a motion to dismiss Plaintiff's Complaint for failure to state a claim from which relief may be granted. ECF No. 8 ("Mot."). On August 30, 2018, Plaintiff filed an opposition. ECF No. 9 ("Opp."). On November 7, 2018, the Court issued an Order Setting Briefing Schedule requiring Defendants to file a reply by November 21. ECF No. 11. On November 20, 2018, Defendants timely filed a reply. ECF No. 12 ("Reply").

## **COMPLAINT ALLEGATIONS**

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the Complaint, and must construe the Complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

According to the Complaint, on April 28, 2017, Plaintiff was told by Assistant Warden Favila that a CDCR 1046 family visitation application should be processed within thirty days of submission. Compl. at ¶ 11. On July 11, 2017, Plaintiff submitted a family visitation application to his correctional counselor, Defendant Angulo, for visitation privileges with his "legal wife" Catherine Clark-Perkins. Id. at ¶ 10.

Plaintiff alleges he subsequently questioned Defendant Angulo regarding the status of the application. Id. at ¶ 11. Defendant Angulo responded he had sixty days to process the application. Id. Plaintiff informed Defendant Angulo he intended to file a CDCR 602 inmate appeal regarding Defendant Angulo's "dilatory actions." Id. at ¶ 11. Plaintiff

alleges Defendant Angulo told Plaintiff filing an appeal would only result in Plaintiff's application being delayed and denied. Id.

On September 10, 2017, Plaintiff submitted a CDCR 22 inmate request-for-interview "in demur" to Defendant Angulo's "dereliction of duty." Id. at ¶ 12. On October 5, 2017, Plaintiff submitted a CDCR 602 inmate appeal alleging "dilatory tactics" of "staff" in processing his family visitation application. Id. at ¶ 13.

Plaintiff alleges that on October 20, 2017, he was interviewed by Defendant Angulo in regards to his appeal, where Defendant Angulo told Plaintiff: "I told you filing paperwork against me will not get your Family Visit Approved." Id. at ¶ 14. Plaintiff alleges that on October 10, 2017, his family visitation application was denied by Defendant Bernal "without reason." Id. at ¶ 15. On October 11, 2017, Plaintiff filed a second CDCR 602 inmate appeal, this time directed to the denial of his family visitation application. Id. at ¶ 16.

Plaintiff alleges that on November 3, 2017, he was called into Defendant Raybon's office in regards to both appeals, at which time Defendant Raybon asked if Plaintiff had anything to add to either of them. Id. at ¶ 17. Plaintiff claims he told Defendant Raybon that calling him in for an interview was a "farce" because Defendant Angulo had previously stated she would deny the application. Id. Defendant Raybon denied both appeals on the same day. Id. at ¶ 18.

Plaintiff alleges Defendants knew there were no legal grounds for their actions because Plaintiff has never been accused or charged with "[d]istribution." Id. at ¶ 20. Plaintiff further alleges Defendants did not take any steps to "abate" the retaliation for his exercise of free speech and that the remaining correctional officers at the prison (named as John Does 1-10 in the Plaintiff's Complaint) also failed to intervene.[1] Id. at ¶¶ 19-20.

---

[1] As the Doe correctional officers have not been served, this Report and Recommendation will not address Plaintiff's claims against them. See Docket.

Plaintiff seeks: (1) compensatory damages in the amount of $500,000; (2) punitive damages in the amount of $500,000; (3) attorneys' fees and costs; and (4) any other relief the Court deems proper. Id. at ¶ 30.

**LEGAL STANDARD**

Pursuant to Fed. R. Civ. P 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. See Fed. R. Civ. P. 12(b)(6). The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted. Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003). In order to survive a motion to dismiss, the plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases. Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating

that because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter the courts' treatment of pro se filings; accordingly we continue to construe pro se filings liberally . . . ." ).

This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil matter. When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim[] that were not initially pled." Easter v. CDC, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint, "unless the pleading could not possibly be cured by the allegation of other facts." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted). Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Ferdik, 963 F.2d at 1261.

To state a claim under § 1983, a plaintiff must allege facts sufficient to show that: (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some "rights, privileges, or immunities" protected by the Constitution of the laws of the United States. 42 U.S.C. § 1983.

## DISCUSSION

### I. Consideration Of Attached Documents

As an initial matter, the Court first addresses whether to consider the extrinsic evidence Plaintiff and Defendants attached to their briefing on Defendants' Motion to Dismiss.

While a district court's review on a 12(b)(6) motion to dismiss generally is limited to the operative pleadings, courts may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial

5

notice—without converting the motion to dismiss into a motion for summary judgment." U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

Under the doctrine of incorporation by reference, "[a] district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleadings." Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1988) (citation omitted) (superseded by statute on other grounds). The "incorporation by reference" doctrine has been extended "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

Under Federal Rule of Evidence 201, a court may also take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. Fed. R. Evid. 201. A court may not take judicial notice of a fact that is "subject to reasonable dispute." Lee v. City of L.A., 250 F.3d 668, 690 (9th Cir. 2001).

          A.        Documents Attached To Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants request that the Court take into consideration: (1) Plaintiff's CDCR 1046 family visitation application (attached as Exhibit A); (2) Plaintiff's CDCR 602 appeal on the denial of his family visitation application and the CDCR's responses (attached as Exhibit B); and (3) Plaintiff's CDCR 602 appeal on the alleged untimely processing of his family visitation application and the CDCR's responses (attached as Exhibit C) under the doctrine of incorporation by reference. Mot. at 5-6. In support, Defendants argue the attached documents are "referenced in the Complaint, and relied upon by Plaintiff throughout the allegations therein." Id. at 12.

In his Opposition, Plaintiff argues the documents are not proper for consideration at this stage of the proceedings because they contain issues of material fact and false

testimony. Reply at 8. Specifically, Plaintiff alleges Defendants are "attempting to mislead the court and boost their chances of success with testimony of fallacy." Id.

Here, Plaintiff does not challenge the authenticity of these documents, only the accuracy of their contents. Notwithstanding the questionable nature of their contents, Plaintiff nevertheless centrally relies on these documents in his Complaint as the basis for his claims. Indeed, Plaintiff's Complaint expressly cites to each of them. See Compl. at ¶¶ 10, 15 (citing to the submission and denial of Plaintiff's CDCR 1046 application (Exhibit A)); ¶ 16-18 (citing to the submission and denial of Plaintiff's CDCR 602 appeal regarding the denial of his family visitation application (Exhibit B)); and ¶¶ 13, 17-18 (citing to the submission and denial of Plaintiff's CDCR 602 appeal regarding the untimely processing of his family visitation application (Exhibit C)). Plaintiff's family visitation application, his appeals, and the CDCR's responses, are further central to Plaintiff's allegations that: (1) his family visitation application was denied "without reason"; and (2) Defendants knew there were no legal grounds for their actions because Plaintiff has never been accused or charged of "[d]istribution." See Comp. at ¶¶ 15, 20.

Given the central role they play in Plaintiff's Complaint, the Court finds it proper to consider the documents to determine how they relate to the Complaint's allegations, without assuming that the statements contained within are true. See In re SolarCity Corp. Sec. Litig., 274 F. Supp. 3d 972, 988 (N.D. Cal. 2017); Leadership Studies, Inc. v. Blanchard Training & Dev., Inc., 2016 U.S. Dist. LEXIS 28930, at *15-19 (S.D. Cal. Mar. 4, 2016).

B.  Documents Attached To Plaintiff's Response

In Plaintiff's Opposition, Plaintiff attaches: (1) notes from a November 27, 2017 classification hearing (attached as Exhibit 1); (2) a portion of Plaintiff's C-File with Plaintiff's handwritten notes (attached as Exhibit 2)[2]; (3) a February 17, 2017

---

[2] Although Exhibit 2 was submitted by Defendants as part of the record in the CDCR's denial of Plaintiff's family visitation application, Plaintiff's version of this Exhibit adds handwritten notes containing new facts that were not raised in Plaintiff's Complaint. ECF No. 9, Ex. 2.

7

memorandum from Kathleen Allison, the then Director of the Division of Adult Institutions at the CDCR (attached as Exhibit 3); and (4) declarations from inmates Robert Smith and Andrew Wallace (attached as Exhibits 4 and 5). Plaintiff does not provide any support as to why the Court should consider these documents. In their Reply, Defendants do not address whether the Court should consider Plaintiff's documents.

Courts "regularly decline to consider declarations and exhibits submitted in support of or in opposition to a motion to dismiss if they constitute evidence not referenced in the complaint or are not a proper subject of judicial notice." United States ex rel. Lim v. Salient Fed. Sols. Inc., 2018 U.S. Dist. LEXIS 78568, at *8-9 (S.D. Cal. May 9, 2018) (quotation omitted).

Here, Plaintiff offers the documents as evidence that: (1) he did not commit certain disciplinary violations and (2) that other similarly situated prisoners were granted family visitation. As the facts contained within the documents can be reasonably disputed, Plaintiff's documents are not the type readily capable of judicial notice. Lee, 250 F.3d at 690. In addition, apart from Exhibit 2, Plaintiff does not cite to or rely on any of these documents in his Complaint. Accordingly, they are not proper for the Court's consideration under the incorporation by reference doctrine either. Plaintiff's copy of Exhibit 2 presents similar issues because it includes handwritten notes with newly raised facts regarding Plaintiff's disciplinary history. See In re Immune Response Sec. Litig., 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005) (declining to consider documents that were not central to Plaintiff's claims and were instead offered as factual evidence as consideration "encourages a weighing of factual disputes; a process that is improper on a motion to dismiss.").

For these reasons, the Court will not consider the documents attached to Plaintiff's Opposition.

///
///
///

8

3:18-CV-00850-DMS-LL

## II. First Amendment Retaliation Claim

### A. Allegations in Plaintiff's Complaint

In his Complaint, Plaintiff alleges Defendants violated his First Amendment rights when they denied his family visitation application as a retaliatory measure after he: (1) informed Defendant Angulo that Defendant Angulo had thirty days to process his application; (2) informed Defendant Angulo that he intended to file an appeal regarding Defendant Angulo's "dilatory actions" after Defendant Angulo told him he had sixty days to process the application; and (3) subsequently submitted a CDCR 22 request-for-interview and CDCR 602 appeal against "staff" for their "dilatory tactics" in processing his application. Compl. at ¶¶ 11-13. Plaintiff alleges his application was denied by Defendant Bernal "without reason" and Defendants "knew that there was no legal ground for their actions" because Plaintiff "was never accused of or charged with "[d]istribution[.]" Id. at ¶¶ 15, 20.

### B. Analysis

A viable claim of First Amendment retaliation within the prison context entails five basic elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

At issue here is whether the denial of Plaintiff's family visitation application advanced a legitimate correctional goal. With respect to this fifth element, the Ninth Circuit has held that a prisoner plaintiff "bears the burden for pleading and proving the absence of legitimate correctional goals for the conduct for which he complains." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). A plaintiff successfully pleads this element "by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the

9

institution[.]'" Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012) (quoting Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984)).

In order to "avoid excessive federal judicial involvement in prison administration", courts afford significant deference to prison officials when evaluating the "proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807. Institutional security has been found to be a legitimate correctional goal. See Nev. Dep't of Corr. v. Greene, 648 F.3d 1014, 1018, 1020 (9th Cir. 2011) (holding that a ban on inmate typewriters was not unconstitutional under the First Amendment because it advanced a legitimate security goal).

Here, Plaintiff's Complaint fails to plead sufficient facts to show that the denial of his family visitation application did not advance a legitimate correctional goal in institutional security. Plaintiff alleges his application was denied "without reason" and he was never accused of or charged with "[d]istribution" (Comp. at ¶¶ 15, 20), but these statements are contradicted by Plaintiff's actual visitation application and appeal file. When assessing a motion to dismiss, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." Steckman v. Hart Brewing, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

The documents show Plaintiff's application was denied under Title 15 of the California Code of Regulations, Section 3117's prohibition against granting family visitation privileges to inmates that have been found guilty of narcotics distribution while incarcerated. See Mot., Ex. A at 2; Ex. B at 3-4, 9-11, 16-17. Specifically, Plaintiff's family visitation application states that Plaintiff was "found guilty of RVR for conspiracy to traffick narcotics onto institutional grounds." Mot., Ex. A at 2. The CDCR's First, Second, and Third Level Responses to Plaintiff's appeal of the denial all cite to: (1) a November 24, 1996 Rules Violation Report charging Plaintiff with "Conspiracy to Trafficking Narcotics Onto Institutional Grounds" and (2) Title 15 of the California Code of Regulations, Section 3177's restrictions against granting family visitation privileges to

10

inmates found guilty of narcotics distribution while incarcerated. See Mot., Ex. B at 3-4, 9-11, 16-17.

Defendants' denial comports with Section 3117's restrictions against granting family visitation to certain classes of inmates, including those found guilty of narcotics distribution while incarcerated. Specifically, Section 3117(b)(2) states: " [f]amily visits shall not be permitted for inmates who are in any of the following categories: . . . guilty of narcotics distribution while incarcerated in a state prison." Cal. Code Regs. tit. 15, § 3177. Section 3000 defines "distribution" to include conspiracy, specifically "conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution." Cal. Code Regs. tit. 15, § 3000. Based on the plain language of the regulation, Defendants were acting reasonably within statutory guidelines when they denied Plaintiff's application. See Kornegay v. Bailey, 2013 U.S. Dist. LEXIS 169798, at *14 (S.D. Cal. Dec. 2, 2013) (defendants advanced a legitimate correctional goal by acting within statutory guidelines to change a prisoner plaintiff's custody status).

In addition, Courts have found that the restrictions set forth in Section 3177 further a legitimate correctional interest in institutional security. See Fredrickson v. Cal. Dep't of Corr. & Rehab., 2017 U.S. Dist. LEXIS 164799, at *5 (E.D. Cal. Oct. 4, 2017) ("[T]he Court finds that § 3177(b) is necessary to further a compelling, legitimate governmental interest.") (citation omitted); Shields v. Foston, 2013 U.S. Dist. LEXIS 95776, at *18 (E.D. Cal. July 9, 2013) ("[S]ection 3177 is narrowly tailored to accomplish the compelling government objective of enhancing prison security.").

For these reasons, Plaintiff's Complaint does not allege sufficient facts to show Defendants denial of his application under Section 3177 did not serve a legitimate correctional goal. See Santana v. Zhang, 2016 U.S. Dist. LEXIS 125955, at *33-34 (S.D. Cal. Sep. 15, 2016) (granting motion to dismiss pro se prisoner plaintiff's § 1983 action where attached medical records contradicted the allegations in complaint); Jones v. Sandy, 2008 U.S. Dist. LEXIS 16155, at *2-4 (E.D. Cal. Feb. 20, 2008) (denying prisoner

11

plaintiff's First Amendment retaliation claim where the denial was based on Section 3177's restrictions and therefore advanced a legitimate correctional goal). See also Murillo v. Flournoy, 2013 U.S. Dist. LEXIS 27826, at *42-43 (S.D. Cal. Jan. 30, 2013), adopted by Murillo v. Flournoy, 2013 U.S. Dist. LEXIS 27904 (S.D. Cal. Feb. 27, 2013).

In his Opposition, Plaintiff raises several new factual allegations and arguments, including that: (1) his family application had been approved and this approval was subsequently scratched out; (2) Defendant Angulo had represented the delay in processing his application was due to a "state of emergency"; (3) the denial of his family visitation application under Section 3177 was improper because he was charged with a Division "B" offense and not a Division "A-2" offense; (4) no narcotics were ever brought onto prison grounds or recovered by prison officials; (5) Defendants have not provided an accurate record of his disciplinary history; and (6) none of the Defendants were directly involved in the December 16, 1996 Rules Violation Report charging him with conspiracy to distribute narcotics. Opp. at 4-5, 9-14.

Normally "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Green v. Paramo, 2018 U.S. Dist. LEXIS 198113, at *14 (S.D. Cal. Nov. 20, 2018) (quoting Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)). However, "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Id.

Although Plaintiff does not directly set forth how these new facts would relate to his claims, the Court is not convinced that leave to amend would be futile at this stage of the proceedings. For these reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim be **GRANTED WITH LEAVE TO AMEND**.

///

///

### III. Fourteenth Amendment Due Process Claim

   A. Allegations in Plaintiff's Complaint

In his Complaint, Plaintiff relies on the same facts alleging that Defendants improperly denied his family visitation application as evidence he was also deprived of due process of law. See Compl. at 4 (identifying "Factual Allegations Common To All Cause[s] Of Action[s]"). Specifically, Plaintiff alleges Defendants acted "willfully and knowingly" to "deprive [him] of [his] rights to due process of law." Compl. at ¶ 24.

   B. Analysis

The Due Process Clause prohibits states from "depri[ving] any person of life, liberty, or property, without the due process of law." U.S. Const. Amend. XIV, Section 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 566 (1972).

In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest. Sandin v. Conner, 515 U.S. 472 (1995). Under Sandin, a prisoner can show a liberty interest under the Due Process Clause of the Fourteenth Amendment only if he alleges a change in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin at 484.

In this case, Plaintiff has failed to establish facts related to the conditions of his confinement which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." Sandin, 515 U.S. at 486. Specifically, Plaintiff alleges his due process rights were denied as the result of being denied family visitation privileges. See Compl. at 4 (identifying "Factual Allegations Common To All Cause[s] Of Action[s]"). However, family visitation is not a liberty interest that triggers due process protection. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not

independently protected by the Due Process Clause."); Kornegay, 2013 U.S. Dist. LEXIS 169798, at *10 ("California has not created liberty interests enforceable by prisoners in either classification or visitation." ) (quoting Stevens v. Robles, 2008 U.S. Dist. LEXIS 17694, at *17 (S.D. Cal. Mar. 6, 2008)). See also Green v. Nieto, 2011 U.S. Dist. LEXIS 136494, at *6-7 (S.D. Cal. Nov. 28, 2011) ("[t]he Due Process Clause does not guarantee a right of unfettered visitation"); Stevens, 2008 U.S. Dist. LEXIS 17694, at *16-17 (prisoner plaintiff "has no liberty interest in family visitation while incarcerated arising under the Constitution itself adequate to trigger the due process protections of the Fourteenth Amendment."). Instead, "Plaintiff's inability to visit his family is an ordinary incident of prison life." Edwards v. Carey, 2008 U.S. Dist. LEXIS 368, at *30 (E.D. Cal. Jan. 3, 2008) (holding that CDCR's family visitation regulation does not impose an atypical and significant hardship) (citations omitted).

Accordingly, Plaintiff cannot as a matter of law meet his burden of pleading a liberty interest.[3] For these reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's due process claim be **GRANTED WITHOUT LEAVE TO AMEND.** See Ramirez, 334 F.3d at 861 (court may dismiss without leave to amend if the pleading cannot be cured by the addition of other facts).

### IV. Fourteenth Amendment Equal Protection Claim

#### A. Allegations in Plaintiff's Complaint

In his Complaint, Plaintiff relies again on the same facts alleging Defendants improperly denied his family visitation application as evidence he was deprived of equal protection under the law. See Compl. at 4 (identifying "Factual Allegations Common To All Cause[s] Of Action[s]"). Apart from these common factual allegations, Plaintiff's Complaint does not allege any specific facts regarding how he was denied equal protection.

---

[3] As Plaintiff cannot meet his burden of pleading a liberty interest, the Court does not reach Defendants alternative argument that Plaintiff's Fourteenth Amendment due process claim should be denied because Plaintiff cannot impermissibly "double up" on his First and Fourteenth Amendment claims.

B. <u>Analysis</u>

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, Section 1.

When analyzing a discrimination claim under the Fourteenth Amendment, the Court must "must first determine the appropriate level of scrutiny to be applied. If the rule disadvantages a suspect class or impinges upon a fundamental right, the court will examine it by applying a strict scrutiny standard. If no such suspect class or fundamental rights are involved, the conduct or rule must be analyzed under a rational basis test." <u>Giannini v. Real</u>, 911 F.2d 354, 358 (9th Cir. 1990).

Absent allegations of inclusion in a protected class or a fundamental right, a plaintiff may premise an equal protection claim on an allegation that he or she is a member of a "class of one." A "class of one" claim exists when: (1) a plaintiff was treated differently from other similarly situated individuals; (2) this difference in treatment was intentional; and (3) there was no rational basis for this difference in treatment. See <u>Gerhart v. Lake Cty. Mont.</u>, 637 F.3d 1013, 1022 (9th Cir. 2010).

Here, Plaintiff's Complaint does not identify any protected class of which he is a member. Prisoners are not a suspect class and do not have a fundamental right to family visitation. See <u>Morgan v. Hill</u>, 2011 U.S. Dist. LEXIS 126248, at *9 (E.D. Cal. Oct. 31, 2011) ("Prisoners do not have a fundamental right to a particular kind of visit or to a visit with a particular person.") (citing <u>Kentucky Dep't of Corrections</u>, 490 U.S. at 461).

Absent a protected class or fundamental right, Plaintiff must allege an equal protection claim under a class-of-one theory. As currently pled however, Plaintiff's Complaint does not allege any facts on how he was treated differently from other similarly situated inmates in connection with family visitation.

Plaintiff's Complaint also fails to show Defendants lacked a rational basis in denying his application. As discussed above, Defendants denied Plaintiff's family visitation application under Section 3177's statutory prohibition against granting family visitation

privileges to inmates found guilty of narcotics distribution while incarcerated. This prohibition is rationally related to a legitimate government interest in institutional security. See Morgan, 2011 U.S. Dist. LEXIS 126248, at *11 (E.D. Cal. Oct. 31, 2011) (granting motion to dismiss equal protection claim where prison officials had rational basis to decline overnight family visitation privileges to plaintiff based on security concerns); Edwards, 2008 U.S. Dist. LEXIS at *31-32 (application of family visitation regulation to prisoner plaintiff did not violate equal protection where plaintiff presented no evidence suggesting he was treated differently from similarly situated inmates and the regulation was rationally related to a legitimate government interest).

In his Opposition, Plaintiff submits the declarations of two other inmates in support of his equal protection claim to purportedly show how he was treated differently from other inmates. Opp. at 13-14. Plaintiff did not raise these allegations until his Opposition. Accordingly, the Court considers them only to determine whether Plaintiff should be given leave to amend. See Green, 2018 U.S. Dist. LEXIS 198113, at *14.

Here, the Court is not convinced that leave to amend would be futile at this stage. For these reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Fourteenth Amendment equal protection claim be **DISMISSED WITH LEAVE TO AMEND.**

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation, (2) granting Defendants' Motions to Dismiss.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than January 22**, **2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than February 11, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise

those objections on appeal of the Court's order.  See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated:  December 19, 2018

_____
Honorable Linda Lopez
United States Magistrate Judge