UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RONNELL PERKINS,<br><br>Plaintiff,<br><br>v.<br><br>C. ANGULO, T. RAYBON; J. BERNAL,<br><br>Defendants. | Case No.: 18cv850-DMS-LL<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 17]** |

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California. For the following reasons, the Court **RECOMMENDS** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint be **GRANTED**.

## PROCEDURAL BACKGROUND

On May 2, 2018, Plaintiff Gary Ronnell Perkins, a state prisoner proceeding *pro se* and *in forma pauperis*, commenced this action under the Civil Rights Act, 42 U.S.C. § 1983, on behalf of himself and his "legal wife" Catherine Clark-Perkins against Defendants C. Angulo, T. Raybon, and J. Bernal. ECF No. 1 ("Compl.").

1

On May 2, 2018, Plaintiff filed a motion for leave to proceed *in forma pauperis*. ECF No. 2. On May 24, 2018, Plaintiff's motion was granted. ECF No. 3. In the Order, the Court dismissed Catherine Clark-Perkins from the suit, holding that Plaintiff, as a *pro se* plaintiff, lacked the authority to represent the legal interests of another party. Id. at 2.

On August 3, 2018, Defendants filed a motion to dismiss Plaintiff's Complaint for failure to state a claim from which relief may be granted. ECF No. 8 ("Mot."). On December 19, 2018, this Court issued a Report and Recommendation for an Order granting Defendants' Motion to Dismiss. ECF No. 13. On February 25, 2019, the Honorable Dana M. Sabraw issued an Order adopting the Report and Recommendation in its entirety. ECF No. 15.

On March 25, 2019, Plaintiff filed a First Amended Complaint ("FAC"). ECF No. 16. On April 11, 2019, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim from which relief may be granted. ECF No. 17 ("Mot."). On May 20, 2019, the Court issued an Order Setting a Briefing Schedule. ECF No. 18. On May 20, 2019, Plaintiff filed a Response. ECF No. 19 ("Opp.").[1] Defendants did not file a Reply. See Docket.

## **COMPLAINT ALLEGATIONS**

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the First Amended Complaint and must construe the First Amended Complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

According to Plaintiff's First Amended Complaint, on or about February 17, 2017, Kathleen Allison, the former Director of the Division of Adult Institutions at the CDCR circulated a memorandum authorizing prisoners serving life sentences to submit CDCR 1046 family visitation applications. FAC at ¶ 9. Subsequently, during an April 28, 2017

---

[1] The Court will consider Plaintiff's Opposition despite the fact that it was untimely filed. Plaintiff was ordered to file an opposition before May 10, 2019. See ECF No. 18.

2

"Inmate Family Council Meeting," Assistant Warden Favila was "recorded as stating" that a CDCR 1046 family visitation application should be processed within thirty days of submission. Id. at ¶ 11.

On July 11, 2017, Plaintiff submitted a family visitation application to his correctional counselor, Defendant Angulo, for visitation privileges with his "legal wife" Catherine Clark-Perkins. Id. at ¶ 10. Plaintiff alleges he subsequently questioned Defendant Angulo regarding the status of the application. Id. at ¶ 11. Defendant Angulo responded he had sixty days to process the application. Id. Plaintiff then informed Defendant Angulo he intended to file a CDCR 602 inmate appeal regarding Defendant Angulo's "dilatory actions" and "dereliction of duty." Id. Plaintiff alleges Defendant Angulo told Plaintiff filing an appeal would only result in Plaintiff's application being delayed and denied. Id. Plaintiff alleges he told Defendant Angulo he would speak with Defendant Raybon about this issue, to which Defendant Angulo allegedly responded: "[I]t won't do you any good she's going to agree with what I do." Id.

On August 15, 2017, Plaintiff's application was denied. Id. at ¶ 12. Plaintiff alleges the denial contains "misleading information." Id. Plaintiff further alleges Defendant Angulo submitted a CDCR 128-B General Chrono form "which fallaciously implied Plaintiff was ineligible for family visit[ation]" by citing "a series of ineligible factors" that allegedly "[do not] apply to [P]laintiff's case factors[.]" Id. Defendant Raybon then signed Plaintiff's CDCR 1046 family visitation application "stating she concurred" with Defendant Angulo's actions in denying the application. Id. at ¶ 13.

On October 10, 2017, Defendant Bernal also signed and denied Plaintiff's family visitation application. Id. at ¶ 14. In doing so, Defendant Bernal allegedly "did not refer Plaintiff's case factor to the Warden as required and stated by Asst. Warden Sidhu[.]" Id.

Plaintiff alleges he was "[a]t all times" entitled to family visitation privileges and was denied "solely because Plaintiff verbally expressed his intent to seek redress" for Defendant Angulo's "dereliction of duty." Id. at ¶ 15. Plaintiff further alleges Defendants knew there were no legal grounds for their actions because Plaintiff was never found guilty

3

of "any division 'A-2' offense" or "other preclusions" but Defendants Raybon and Bernal "as supervisors" took no steps to "abate" Defendant Angulo's retaliatory actions. Id. at ¶ 17.

Plaintiff seeks: (1) compensatory damages in the amount of $500,000; (2) punitive damages in the amount of $500,000; (3) attorneys' fees and costs; and (4) any other relief the Court deems proper. Id. at ¶ 30.

## **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. See Fed. R. Civ. P. 12(b)(6). The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted. Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003). In order to survive a motion to dismiss, the plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson, 295 F.3d at 895. This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil rights

case. Easter v. CDC, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)). When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim[] that were not initially pled." Easter, 694 F. Supp. at 1183 (S.D. Cal. 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint, "unless the pleading could not possibly be cured by the allegation of other facts[.]" Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted). Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Ferdik, 963 F.2d at 1261.

To state a claim under § 1983, a plaintiff must allege facts sufficient to show that: (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some "rights, privileges, or immunities" protected by the Constitution of the laws of the United States. 42 U.S.C. § 1983.

## DISCUSSION

### I. Consideration Of Attached Documents

As an initial matter, the Court first addresses whether to consider the extrinsic evidence Plaintiff and Defendants attached to their briefing on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

While a district court's review on a 12(b)(6) motion to dismiss is generally limited to the operative pleadings, courts may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

5

Under the doctrine of incorporation by reference, "[a] district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleadings." Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1988) (citation omitted). The "incorporation by reference" doctrine has been extended "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

Under Federal Rule of Evidence 201, a court may also take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201. See Lee v. City of L.A., 250 F.3d 668, 689-90 (9th Cir. 2001).

### A. **Documents Attached To Defendants' Motion to Dismiss**

In their Motion to Dismiss, Defendants request the Court take into consideration: (1) Plaintiff's CDCR 1046 family visitation application (attached as Exhibit A); and (2) a CDCR 128-B General Chrono form signed by Defendant Angulo (attached as Exhibit B) under the doctrine of incorporation by reference. Mot. at 11-13. In support, Defendants argue the attached documents are "referenced in the First Amended Complaint, and relied upon by Plaintiff throughout the allegations therein." Id. at 11-12. Plaintiff is silent on whether he opposes Defendants' request. See Opp.

The Court finds it proper to consider these documents to determine how they relate to the allegations in Plaintiff's First Amended Complaint. As Defendants note, Plaintiff's First Amended Complaint expressly cites to both documents. See FAC at ¶ 10-14 (citing to submission and denial of Plaintiff's CDCR 1046 application); ¶ 12 (citing to CDCR 128-B General Chrono form). In addition, Plaintiff's family visitation application and the CDCR 128-B General Chrono form are central to Plaintiff's allegations that: (1) Defendants falsely implied Plaintiff was ineligible for family visitation as a retaliatory measure; and (2) Defendants knew there was no legal grounds for their actions because

Plaintiff has not been found guilty of a Division A-2 Offense or any other preclusions. <u>Id.</u> at ¶¶ 12, 17-18.

### B. <u>Documents Attached To Plaintiff's Response</u>

In Plaintiff's Opposition, Plaintiff requests the Court take judicial notice of or consider under the doctrine of incorporation by reference: (1) excerpts from Title 15 of the California Code of Regulations (attached as Exhibits 1-5); (2) a CDCR 128-B General Chrono form signed by Defendant Angulo with handwritten notes (attached as Exhibit 6); (3) a February 17, 2017 memorandum from Kathleen Allison, the then Director of the Division of Adult Institutions at the CDCR (attached as Exhibit 7); and (4) meeting minutes from an April 28, 2017 Inmate Family Council with handwritten notes (attached as Exhibit 8). Plaintiff requests that the Court consider these documents for their truth "to give the [C]ourt the complete information it needs to make a fair and impartial decision and to dispel the fallacy by the defendants[.]" Opp. at 10.

Plaintiff's request as to Exhibits 1-5 is denied as unnecessary. <u>See</u> <u>Kennedy v. Lehman Bros. Bank, FSB</u>, 2010 U.S. Dist. LEXIS 116415, at *7 (S.D. Cal. Nov. 2, 2010) (judicial notice of statutes unnecessary).

As to Plaintiff's Exhibit 6, the Court has already found it proper to consider the CDCR 128-B General Chrono form. The handwritten notes added to Plaintiff's copy of this documents generally repeat the allegations already set forth in his First Amended Complaint. <u>See</u> FAC at ¶ 12. For these reasons, the Court finds Plaintiff's request to consider these notes unnecessary.

As to Plaintiff's Exhibits 7-8, memoranda written by prison officials and meeting minutes are not judicially noticeable documents because their contents are subject to reasonable dispute. <u>See</u> <u>Pratt v. Hedrick</u>, 2015 U.S. Dist. LEXIS 81432, at *4 (N.D. Cal. June 23, 2015). It would also be improper to consider Exhibits 7-8 under the doctrine of incorporation of reference. Although Exhibits 7-8 are referenced in Plaintiff's First Amended Complaint, the First Amended Complaint does not necessarily rely on their contents and neither document is central to Plaintiff's allegations of retaliation. <u>See</u> <u>Missud</u>

7

v. Oakland Coliseum Joint Venture, 2013 U.S. Dist. LEXIS 29915, at *32 (N.D. Cal. Mar. 5, 2013) (declining to incorporate documents where plaintiff did not necessarily rely on them and they were not central to plaintiff's claims).

## II. First Amendment Retaliation Claim

### A. Analysis

#### 1. Plaintiff's First Amended Complaint

In his First Amended Complaint, Plaintiff alleges: (1) Plaintiff's CDCR 1046 family visitation application was denied (after being marked approved) "with written misleading information"; and (2) Defendant Angulo submitted a CDCR 128-B General Chrono Form which "fallaciously implied" Plaintiff was ineligible for family visitation due to a series of inapplicable factors. FAC at ¶ 12. Plaintiff alleges the denial was a retaliatory measure after he informed Defendant Angulo he intended to file an appeal regarding Defendant's "dilatory actions" in not processing Plaintiff's family visitation application within thirty days. Id. at ¶¶ 11-12, 15. Specifically, Plaintiff alleges his application was denied "solely because Plaintiff verbally expressed his intent to seek redress of [Defendant] Angulo['s] dereliction of duty." Id. at ¶ 15. Plaintiff alleges that Defendants Raybon and Bernal then signed off on this denial. Id. at ¶¶ 13-14. Plaintiff alleges all of the Defendants knew there was no "legal basis" for their actions but "exaggerated their responses to prison concerns" and "conjointly conspired to deny Plaintiff's CDCR 1046 application with false information." Id. at ¶¶ 17-18.

A viable claim of First Amendment retaliation within the prison context entails five basic elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

Here, Plaintiff's First Amended Complaint fails to cure the deficiencies in his original Complaint. First, Plaintiff has not pled sufficient facts to support a retaliation claim

8

against Defendants Raybon and Bernal. Plaintiff only ascribes a retaliatory motive to Defendant Angulo, but fails to allege sufficient facts to suggest either Defendant Raybon or Bernal acted on Defendant Angulo's behalf. Indeed, Plaintiff does not even allege that Defendants Raybon and Bernal were aware of Plaintiff's conversations with Defendant Angulo. See FAC. Instead, Plaintiff simply alleges: (1) both officers signed the denial of his family visitation application; and (2) Defendant Bernal allegedly "did not refer Plaintiff's case factor to the Warden as required[.]" Id. at ¶¶ 13-14. This is insufficient to support a claim against either Defendants Raybon or Bernal. See Mitchell v. Haviland, 2013 U.S. Dist. LEXIS 15638, at *20-21 (E.D. Cal. Feb. 4, 2013) (recommending dismissal of plaintiff's retaliation claim against defendant where there was no evidence defendant was motivated to retaliate against plaintiff on behalf of another officer) (adopted in Mitchell v. Haviland, 2013 U.S. Dist. LEXIS 52491 (E.D. Cal. Apr. 10, 2013)).

Plaintiff's allegation that Defendants Bernal and Raybon are liable because they acted as supervisors (FAC at ¶¶ 7-8) also fails as a matter of law. "Supervisors may not be held liable under Section 1983 for the actions of subordinate employees based on *respondent superior* or vicarious liability." Jackson v. Aviles, 2019 U.S. Dist. LEXIS 90015, at *18 (S.D. Cal. May 28, 2019). Even under a "deliberate indifference" theory, Plaintiff must still allege sufficient facts to plausibly establish Defendant Bernal and Raybon's "knowledge of" and "acquiescence in" the unconstitutional conduct of their subordinates. See Jones v. Paramo, 2019 U.S. Dist. LEXIS 98163, at *14 (S.D. Cal. June 10, 2019) (quoting Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012)).

Similarly, Plaintiff's conclusory allegation that Defendants "conjointly conspired to deny Plaintiff's CDCR 1046 application with false information" (FAC at ¶ 18) is similarly deficient. The Ninth Circuit applies a heightened pleading standard to conspiracy claims in Section 1983 cases. See Rios v. Paramo, 2016 U.S. Dist. LEXIS 122502, at *112 (S.D. Cal. July 15, 2016) (citing Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997)). Plaintiffs alleging a conspiracy must "include in their complaint nonconclusory allegations containing evidence of unlawful intent or face dismissal[.]" Harris, 126 F.3d at 1195. A

9

bare allegation that one defendant "conspired" with another is insufficient to state a claim. See Johnson v. Silva, 2011 U.S. Dist. LEXIS 88102, at *32 (S.D. Cal. July 13, 2011) (adopted in Johnson v. Silva, 2011 U.S. Dist. LEXIS 88023 (S.D. Cal. Aug. 8, 2011)).

Second, Plaintiff fails to allege sufficient facts to show Defendants did not have a legitimate correctional goal in denying his family visitation application. With respect to this fifth element, the Ninth Circuit has held that a prisoner plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct for which he complains." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). A plaintiff successfully pleads this element "by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious" or "that they were unnecessary to the maintenance of order in the institution[.]" Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012) (quoting Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984)).

In order to "avoid excessive federal judicial involvement in prison administration," courts afford significant deference to prison officials when evaluating the "proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807. Institutional security has been found to be a legitimate correctional goal. See Nev. Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (holding that a ban on inmate typewriters was not unconstitutional under the First Amendment because it advanced a legitimate security goal).

Here, Plaintiff's allegation his family visitation application was denied "solely because Plaintiff verbally expressed his intent to seek redress of [Defendant] Angulo['s] dereliction of duty" (FAC at ¶ 15) is contradicted by the documents. When assessing a motion to dismiss, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." Steckman v. Hart Brewing, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

The documents indicate Plaintiff's family visitation application was denied because Plaintiff was found guilty in a November 24, 1996 Rules Violation Report of Conspiracy to Traffic Narcotics on Institutional Grounds—Section 3016, Title 15 of the California

Code of Regulations. This is set forth in both Plaintiff's family visitation application and the CDCR 128-B General Chrono Form signed by Defendant Angulo. See Mot., Ex. A at 4 (indicating Plaintiff had been "found guilty of RVR for Conspiracy to Traffick Narcotics Onto Institutional Grounds" and citing November 24, 1996 CDC 115 Rules Violation Report); Ex. B (indicating one of the criteria reviewed was whether Plaintiff had been found guilty of narcotics trafficking and referencing "CDC 115 dated 11/24/1996 Conspiracy to Traffick[] Narcotics Section 3016").

As this Court already found, Defendants' denial comported with Section 3117's restrictions against granting family visitation to certain classes of inmates, including those found guilty of narcotics distribution while incarcerated. Specifically, prior to January 15, 2019, Section 3117(b)(1) stated: "[f]amily visits shall not be permitted for inmates who are in any of the following categories: . . . guilty of narcotics distribution while incarcerated in a state prison." Cal. Code Regs. tit. 15, § 3177.[2] Section 3000 defines "distribution" to include "conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution." Cal. Code Regs. tit. 15, § 3000. Indeed, in his Opposition, Plaintiff concedes Section 3117 "states unambiguously" family visitation is not permitted for "inmates who are 'guilty' of narcotics distribution[.]'" Opp. at 12.

Courts have found Section 3117's restrictions further a legitimate correctional interest in institutional security. See Fredrickson v. Cal. Dep't of Corr. & Rehab., 2017 U.S. Dist. LEXIS 164799, at *5 (E.D. Cal. Oct. 4, 2017) ("[T]he Court finds that § 3177(b) is necessary to further a compelling, legitimate governmental interest.") (citation omitted); Shields v. Foston, 2013 U.S. Dist. LEXIS 95776, at *18 (E.D. Cal. July 9, 2013) ("[S]ection 3177 is narrowly tailored to accomplish the compelling government objective of enhancing prison security[.]").

---

[2] Section 3117 was recently amended, and these amendments became operative on January 15, 2019.

Plaintiff's allegations that his family visitation application contains "misleading information" and the CDCR 128-B General Chrono form signed by Defendant Angulo falsely implied he was ineligible for family visitation "due to a series of ineligible case factors" (FAC at ¶ 12) are similarly unsupported. Specifically, Plaintiff alleges he was never found guilty of a "Division A-2" offense. Id. In support, Plaintiff cites Title 15 of the California Code of Regulations Section 3323(c)(6), which provides the "[i]ntroduction or distribution of any controlled substance, as defined in section 3000, in an institution/facility or contract health facility" is a "Division A-2 offense." Id. However, Plaintiff's First Amended Complaint provides no further details on how this categorization relates to his retaliation claim or how the denial of his family visitation application is otherwise "misleading." See FAC.

Instead, it is only in his Opposition that Plaintiff alleges: (1) he was penalized for the conspiracy violation in a manner consistent with committing a Division "B" rather than a Division "A-2" offense; (2) no drugs were ever found; and (3) there was no evidence any alleged conspiracy was for the purposes of sale or distribution. Opp. at 12. Plaintiff further alleges he subsequently filed a family visitation application on January 23, 2019, which was approved despite his status being unchanged. Id. at 18.

Plaintiff was already advised in the Court's prior Report and Recommendation that "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Green v. Paramo, 2018 U.S. Dist. LEXIS 198113, at *14 (S.D. Cal. Nov. 20, 2018) (quoting Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original).

The Court therefore considers the arguments in Plaintiff's Opposition only to determine whether Plaintiff should be granted leave to amend. Id. First, the Court notes (contrary to Plaintiff's allegations) that the documents the Court already considered when dismissing Plaintiff's original Complaint show Plaintiff was found guilty of Conspiracy to Traffic Narcotics under Title 15, Section 3016. See ECF No. 8-1 at 42 ("[Plaintiff] was

subsequently found guilty of CDC-115 dated 11-24-96 for the specific act of Conspiracy to Trafficking Narcotics onto Institutional Grounds"); 43 (CDC-115 Rules Violation Report for "Conspiracy to Trafficking Narcotics Onto Institutional Grounds"); 53 (citing violation of § 3016 with the "specific act[]" of "Conspiracy to Trafficking Narcotics Onto Institutional Grounds").

Plaintiff's argument that he was found guilty despite: (1) no drugs being found and (2) it being unproven that the conspiracy was for sale and distribution—provides no basis by which to impose liability against Defendants. Centrally, Plaintiff concedes none of the Defendants were involved in the adjudication or review of the November 24, 1996 Rules Violation Report. See Opp. at 21. Plaintiff's allegations that he was improperly charged therefore cannot form a basis for his claims that Defendants retaliated against him. See Player v. Salas, 2007 U.S. Dist. LEXIS 20375, at *8-9 (S.D. Cal. Mar. 21, 2007) (dismissing retaliation claim against defendant who was not involved in issuing RVR and who only acted based on findings of others in setting plaintiff's punishment); see also Davis v. Chapparro, 2007 U.S. Dist. LEXIS 16957, at *12 (E.D. Cal. Feb. 22, 2007) (Plaintiff's disagreement with issuance of a Rules Violation Report and finding of guilt insufficient to support a claim his federal rights were violated).

Plaintiff's allegation that his second family visitation application was granted in 2019 despite the fact that his "status" remained unchanged (Opp. at 18) would also not necessarily demonstrate Defendants lacked a legitimate correctional goal in denying his first application. See Player v. Salas, 2007 U.S. Dist. LEXIS 70144, at *13 (S.D. Cal. Sep. 18, 2007) (fact that a disciplinary action was reversed did not suffice to show defendant lacked legitimate penological goal in authoring and submitting a Rules Violation Report).[3]

---

[3] The Court finds this is especially true given the amendments made to Section 3117's restrictions against family visitation, which only became operative on January 15, 2019. It is possible these amendments could explain the subsequent grant of Plaintiff's application in 2019. No Party has directly addressed this issue.

13

Regardless, these allegations appear nowhere in Plaintiff's First Amended Complaint. Plaintiff was already cautioned his claims would be dismissed with prejudice if his First Amended Complaint did not cure the pleading deficiencies present in his original Complaint. ECF No. 15 at 1-2.

For the above reasons, the Court **RECOMMENDS** Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim be **GRANTED WITHOUT LEAVE TO AMEND.**

### III. Fourteenth Amendment Equal Protection Claim

#### A. Analysis

In his First Amended Complaint, Plaintiff relies on the same facts alleging Defendants improperly denied his family visitation application as evidence he was deprived of equal protection under the law. See FAC at 4 (identifying "Factual Allegations Common To All Cause[s] Of Action[.]").

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, Section 1. When analyzing a discrimination claim under the Fourteenth Amendment, the Court must "must first determine the appropriate level of scrutiny to be applied. If the rule disadvantages a suspect class or impinges upon a fundamental right, the court will examine it by applying a strict scrutiny standard. If no such suspect class or fundamental rights are involved, the conduct or rule must be analyzed under a rational basis test." Giannini v. Real, 911 F.2d 354, 358 (9th Cir. 1990).

Absent allegations of inclusion in a protected class or a fundamental right, a plaintiff may premise an equal protection claim on an allegation that he or she is a member of a "class of one." A "class of one" claim exists when: (1) a plaintiff was treated differently from other similarly situated individuals; (2) this difference in treatment was intentional; and (3) there was no rational basis for this difference in treatment. See Gerhart v. Lake Cty. Mont., 637 F.3d 1013, 1022 (9th Cir. 2010).

Here, prisoners are not a suspect class and do not have a fundamental right to family visitation. See Morgan v. Hill, 2011 U.S. Dist. LEXIS 126248, at *9 (E.D. Cal. Oct. 31, 2011) ("Prisoners do not have a fundamental right to a particular kind of visit or to a visit with a particular person.") (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989)). Because Plaintiff's First Amended Complaint does not identify any protected class of which he is a member, Plaintiff must allege an equal protection claim under a class-of-one theory. Here, Plaintiff alleges Defendants "discriminated against Plaintiff because they denied Plaintiff" family visitation privileges, a "benefit that they have granted to other inmates equally situated as [P]laintiff." FAC at ¶ 16.

Plaintiff's First Amended Complaint is insufficient to set forth a plausible equal protection claim. First, Plaintiff has not adequately identified, beyond a speculative level, other individuals with whom he can be compared for equal protection purposes. See Hunter v. Odom, 2019 U.S. Dist. LEXIS 62043, at *5 (N.D. Cal. Apr. 9, 2019) ("A plaintiff inmate attempting to assert a class-of-one equal protection claim must identify "with specificity" who the "similarly situated" inmates are in comparison to whom Plaintiff "was treated differently without a rational basis.").

Second, Plaintiff's First Amended Complaint fails to show Defendants lacked a rational basis in denying his application. As discussed in the Court's prior Report and Recommendation, Section 3177's statutory prohibition against granting family visitation privileges to inmates found guilty of narcotics distribution is rationally related to a legitimate government interest in institutional security. See Morgan, 2011 U.S. Dist. LEXIS 126248, at *11 (granting motion to dismiss equal protection claim where prison officials had rational basis to decline overnight family visitation privileges to plaintiff based on security concerns); Edwards v. Carey, 2008 U.S. Dist. LEXIS 368, at *31-32 (E.D. Cal. Jan. 3, 2008) (application of family visitation regulation to prisoner plaintiff did not violate equal protection where plaintiff presented no evidence suggesting he was treated differently from similarly situated inmates and the regulation was rationally related to a legitimate government interest).

The Court is also not convinced by Plaintiff's Opposition that Plaintiff should be provided a second opportunity to amend. As directed to Plaintiff's equal protection claim, Plaintiff's Opposition merely repeats the allegations already discussed above that: (1) Plaintiff was allegedly never found guilty of conspiracy to traffick narcotics; and (2) Plaintiff was falsely charged because no drugs were ever found. See Opp. at 21. These arguments are unconvincing for the same reasons already discussed above.

Again, regardless, these allegations appear nowhere in Plaintiff's First Amended Complaint, and Plaintiff was already cautioned he would not be allowed further leave to amend if he failed to cure the pleading deficiencies in his Complaint. ECF No. 15 at 1-2. For these reasons, the Court **RECOMMENDS** Defendants' motion to dismiss Plaintiff's First Amended Complaint be **DISMISSED WITHOUT LEAVE TO AMEND.**

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation, (2) granting Defendants' Motions to Dismiss.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than July 29, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than August 19, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: June 27, 2019

_____
Honorable Linda Lopez
United States Magistrate Judge