1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| GARY RONNELL PERKINS, CDCR #E-30776, | Case No.: 3:18-CV-0850-DMS-LL |
| Plaintiff, | **ORDER:** |
| vs. | **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND** |
| C. ANGULO, Correctional Counselor. T. RAYBON, Correctional Counselor J. BERNAL, Correctional Captain, | **(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO Fed. R. Civ. P. 56(a)** |
| Defendants. | **[ECF Nos. 58, 70]** |

   GARY RONNELL PERKINS ("Plaintiff"), a prisoner currently incarcerated at the Ironwood State Prison located in Blythe, is proceeding pro se and in forma pauperis ("IFP") in this civil action pursuant to 42 U.S.C. § 1983.

   In his First Amended Complaint ("FAC"), Plaintiff alleges Centinela State Prison ("CEN") prison officials retaliated against him in violation of his First Amendment rights and denied him equal protection under the Fourteenth Amendment. *See* ECF No. 15 at 1-11.

1

1

## I.      Procedural History

2        On May 24, 2018, the Court granted Plaintiff leave to proceed IFP pursuant to 28

3   U.S.C. § 1915(a) and screened his Complaint before service as required by 28 U.S.C.

4   § 1915(e)(2) and § 1915A(b).  *See* ECF No. 3. The Court sua sponte dismissed Plaintiff

5   Catherine Clark-Perkins but found Plaintiff's retaliation and equal protection claims

6   against Defendants Angulo, Raybon, and Bernal sufficient to state plausible claims upon

7   which relief may be granted.  *Id.* at 5-7.

8        On February 25, 2019, the Court adopted the Report and Recommendation

9   granting Defendants' Motion to Dismiss.  *See* ECF No. 15.  Plaintiff was granted leave to

10  file an amended complaint which cured the deficiencies of pleading of his First

11  Amendment retaliation claim and Fourteenth Amendment equal protection claim.  *See id.*

12  at 1-2.  Plaintiff's due process claim was dismissed without leave to amend.  *See id*.

13       Plaintiff filed his First Amended Complaint ("FAC") on March 25, 2019.  *See* ECF

14  No. 16.  On October 17, 2019, the Court adopted the Report and Recommendation

15  granting Defendants' Motion to Dismiss and dismissed Plaintiff's FAC in its entirety

16  without leave to amend.  *See* ECF No. 22.  However, the Court later granted Plaintiff's

17  motion to alter or amend the judgment pursuant to Federal Rules of Civil Procedure

18  59(e).  *See* ECF No. 35 at 3.  The Clerk of Court was directed to vacate the judgment

19  entered on October 18, 2019 and Defendants were directed to file a responsive pleading.

20  *See id.*  On March 11, 2020, Defendants filed an Answer to Plaintiff's FAC.  *See* ECF

21  No. 36.

22       On August 19, 2020, Plaintiff filed a Motion for Summary Judgment.  *See* ECF

23  No. 58.  Defendants' filed an Opposition to Plaintiff's Motion on October 2, 2020, to

24  which Plaintiff filed a Reply.  *See* ECF Nos. 62, 65.  On December 2, 2020, Defendants

25  filed a Motion for Summary Judgment.[1]  *See* ECF No. 70.  On December 3, 2020, the

26

27

28

[1] Defendants' Motion for Summary Judgment is identical to their Opposition to Plaintiff's Motion for Summary Judgment.

Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and set a briefing schedule. *See* ECF No. 71. Plaintiff filed his Opposition to Defendants' Motion on January 4, 2021.  *See* ECF No. 72.

The Court determined that a report and recommendation from Magistrate Judge Lopez was not necessary, no oral argument was required, and took both Plaintiff's and Defendants' Motions for Summary Judgment under submission for resolution on the papers pursuant to S.D. CAL. CIVLR 7.1.d.

Having carefully considered the record as submitted, the Court now DENIES Plaintiff's Motion for Summary Judgment and GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment. Genuine disputes of material fact exist in this case, as to Plaintiff's retaliation claims, and as discussed in detail below, they require resolution at trial.

## II.    Factual Background

## I.    Plaintiff's Claims[2]

On July 11, 2017, Plaintiff submitted a Family Visiting Application to his correctional counselor, Defendant Angulo, for visitation privileges with his wife, Catherine Clark-Perkins. Declaration of Ronnell Perkins in Supp. of Mot., ECF No. 58 at 68-70 ("Perkins Decl.") at ¶ 2.

---

[2] Plaintiff's Motion for Summary Judgment includes a verified declaration [ECF No. 58 at 67-70], and the Court will consider the relevant factual statements made in that declaration.  Plaintiff's Complaint [ECF No. 1] and First Amended Complaint [ECF No. 16] are not signed under penalty of perjury but contain factual allegations within Plaintiff's personal knowledge. To the extent Plaintiff could testify under oath at trial regarding his personal knowledge, the Court will consider those statements. *See Fraser v. Goodale*, 342 F.3d at 1036-1037 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *see also Rosenfeld v. Mastin*, No. CV 11-7002-DOC(E), 2013 U.S. Dist. LEXIS 151869, at *13-14 (C.D. Cal. Sep. 11, 2013) (considering plaintiff's unsworn statements because plaintiff "plainly has personal knowledge of the content of these statements and could present the statements in admissible form through his own testimony at trial," but not considering plaintiff's speculative statements regarding a particular claim where there was no indication plaintiff had personal knowledge of the claim).

On or about August 11, 2017, Plaintiff contends he went to Defendant Angulo's office and inquired regarding the status of his application. *Id.* at ¶ 3. Defendant Angulo responded that "he hasn't [*sic*] got to it yet." *Id.* Plaintiff told Defendant Angulo that—pursuant to an April 28, 2017 statement made by Assistant Warden Favila at an Inmate's Family Council meeting—the application should take no longer than thirty days to process. *Id.*; ECF No. 58 at 75.  Defendant Angulo responded he had sixty days to do so. Perkins Decl. at ¶ 2.

Plaintiff contends he then informed Defendant Angulo "he was derelict in his duties as a correctional counselor" and that Plaintiff would be filing a CDCR 602 Inmate Appeal against him "for his dilatory actions." *Id*. Plaintiff claims Defendant Angulo responded: "[I]f you file a 602 against me not only will it further delay but I will assure you it will be denied." *Id*. Plaintiff alleges he told Defendant Angulo he would speak with Defendant Raybon about this issue, to which Defendant Angulo responded: "[G]o ahead she is gonna go along with what I submit to her." *Id*.

On August 15, 2017, Plaintiff's Family Visitation Application was denied. FAC at ¶ 12. On August 29, 2017, Plaintiff submitted a CDCR 602 Inmate Appeal (No. CEN-A-17-01208) against Defendant Angulo after being informed by his wife that his Family Visiting Application had been denied. ECF No. 58 at 68 at ¶ 4. On October 5, 2017, Plaintiff submitted a second CDCR 602 Inmate Appeal (No. CEN-A-17-01457) requesting a "full investigation into the dilatory tactics and dereliction of duty by staff" in the processing of his Family Visiting Application. *Id.* at ¶ 5.

On October 11, 2017, Plaintiff's Family Visiting Application was returned to him along with a CDCR 128-B General Chrono dated August 15, 2017. *Id.* at ¶ 7. Plaintiff alleges the CDCR 128-B "fallaciously implied Plaintiff was ineligible for family visit[ation]" by citing "a series of ineligible factors" that allegedly "[do not] apply to [P]laintiff's case factors[.]" FAC at ¶ 12.

On October 20, 2017, Plaintiff contends he was called into Defendant Angulo's office. *Id.* Plaintiff alleges Defendant Angulo stated: "[I]f you withdraw this 602 maybe

4

your application wont [*sic*] be denied[.]" *Id.* Plaintiff responded: "I don't know why they assigned you to interview for a complaint against you, you can process it as it is, I no longer want to discuss this with you[.]" *Id.* Defendant Angulo allegedly responded: "[Y]ou know this is never going to go anywhere" as Plaintiff left. *Id.*

On November 3, 2017, Plaintiff was called in to an interview with Defendant Raybon regarding Appeal No. CEN-A-17-01457, at which time he explained to her "everything that [had] transpired" between him and Defendant Angulo. *Id.* Defendant Raybon responded: "I'll [l]ook into and get back to you[.]" *Id.* On November 13, 2017, Plaintiff's appeal was denied at the Second Level by Warden Madden. *Id.* On February 9, 2018, Plaintiff's appeal was denied at the Third Level. *Id.*

Plaintiff contends he then resubmitted CDCR 602 Inmate Appeal No. CEN-A-17-01208. *Id.* at ¶ 6. At some point, Plaintiff was interviewed on this appeal at the First Level by Defendant Raybon. *Id.*[3] At the interview, Plaintiff asserted the denial of his Family Visiting Application was not in compliance with Sections 3177(b)(2) or 3016(c) of Title 15 of the California Code of Regulations. *Id.* Plaintiff claims he "once again explained" to Defendant Raybon that Defendant Angulo "was simply retaliating against me because I told him I was gonna write him up[.]" *Id.* Defendant Raybon responded: "I'll look into[.]" *Id.* On December 8, 2017, Warden Madden denied Plaintiff's appeal at the Second Level. *Id.* On March 7, 2018, Plaintiff's appeal was denied at the Third Level. *Id.*

Plaintiff contends he was "[a]t all times" entitled to family visitation privileges and his Family Visiting Application was denied "solely because Plaintiff verbally expressed his intent to seek redress" for Defendant Angulo's "dereliction of duty." *Id.* at ¶ 15.

/ / /

/ / /

---

[3] Although Plaintiff contends this meeting also occurred on November 3, 2017, it is unclear to the Court whether Plaintiff is asserting he had a single meeting with Defendant Raybon regarding both of his inmate appeals, or if he had more than one meeting with Defendant Raybon—and his statements regarding the dates of these meetings are in error.

## II.      Defendants' Claims

Defendants state that pursuant to CDCR policy, Defendant Angulo was not required to complete his review of Plaintiff's Family Visiting Application until sixty days of receipt. Declaration of C. Angulo in Supp. of Opposition ("Angulo Decl.") at ¶ 2; ECF No. 62-3 at 7. Plaintiff's Family Visiting Application was dated July 11, 2017, and Defendant Angulo contends he processed the application on August 15, 2017. Angulo Decl. at ¶¶ 2, 4.

In so doing, Defendant Angulo states he reviewed Plaintiff's Central File and CDCR records and discovered Plaintiff had been found guilty on a CDCR 115 Rules Violation Report for "Conspiracy to Trafficking Narcotics onto Institutional Grounds" in 1996. *Id.* at ¶ 4. As a result, Defendant Angulo contends he recommended Plaintiff's Family Visiting Application be denied because Plaintiff's guilty finding was "under the 2017 Title 15 Regulations, a disqualifying infraction for family visits." Angulo Decl. at ¶ 9. Defendant Angulo states he made a handwritten note of Plaintiff's disciplinary history and then drafted a CDCR 128B Chrono noting Plaintiff had a Rules Violation Report for "Conspiracy to Trafficking Narcotics." *Id.* at ¶¶ 4, 10. He then signed and dated Plaintiff's Family Visiting Application and forwarded it to his supervisor, Defendant Raybon, for her review and recommendation. *Id.* at ¶ 11.

Defendant Raybon also contends she was not required to complete her review of Plaintiff's Family Visiting Application until sixty days of receipt. Declaration of T. Raybon in Supp. of Opposition ("Raybon Decl.") at ¶ 3; ECF No. 62-6 at 2.  Defendant Raybon states she received Plaintiff's Family Visiting Application on August 15, 2017. *Id.* at ¶ 2. She then reviewed Plaintiff's Central File and CDCR records, including Plaintiff's CDCR 115 Rules Violation Report, and the applicable Title 15 regulations governing family visitation. *Id.* at ¶ 4. Based on this review, Defendant Raybon states she agreed with Defendant Angulo's assessment and made a handwritten notation on Plaintiff's Family Visiting Application: "Concur with CCI. Found guilty of Rules Violation Report for conspiracy to trafficking narcotics onto institutional grounds. *Id.* at ¶ 4. On or about August

6

25, 2017, Defendant Raybon states she forwarded Plaintiff's Family Visiting Application to Defendant Bernal. Raybon Decl. at ¶ 10.

On September 13, 2017, Defendant Angulo contends he had a conversation with Plaintiff, where he informed Plaintiff his Family Visiting Application was in Defendant Bernal's office, and that many prison programs had been delayed because of inmate violence at Centinela creating a state of emergency beginning August 28, 2017. Angulo Decl. at ¶ 13.[4] On the same day, Defendant Angulo also e-mailed Defendant Bernal requesting a response on Plaintiff's Family Visiting Application. *Id.*

Defendant Bernal contends he also reviewed Plaintiff's CDCR 115 Rules Violation Report and the Title 15 regulations governing family visitation. Declaration of J. Bernal in Supp. of Opposition ("Bernal Decl.") at ¶ 4; ECF No. 62-4 at 2. Based on this review, Defendant Bernal states he agreed with Defendant Angulo and Raybon's recommendations and signed and dated Plaintiff's Family Visiting Application on October 10, 2017. *Id.*

All of the Defendants contend that: (1) they did not delay in processing Plaintiff's Family Visiting Application; (2) they did not tell Plaintiff they would do so because of any complaint he filed; and (3) they did not ask any other staff members to delay in processing Plaintiff's application. Angulo Decl. at ¶ 15; Bernal Decl. at ¶ 11; Raybon Decl. at ¶ 12. Defendants further all contend that they did not recommend other inmates with the same or similar infractions be approved for family visitation. Angulo Decl. at ¶ 16; Bernal Decl. at ¶ 12; Raybon Decl. at ¶ 13.

## III.   Request for Judicial Notice and Evidentiary Objections

### a.    Plaintiff's Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of Plaintiff's Exhibits E and F. *See* ECF No. 58 at 46. Plaintiff's Exhibit E is a Report and Recommendation issued in *Javier Raygosa v. California Department of Corrections and Rehabilitation*, 12cv626-

---

[4] Plaintiff denies that this conversation took place. ECF No. 72 at 20.

BAS-MDD from the Southern District of California *Id.* at 51-62. Plaintiff's Exhibit F is a portion of an Order granting a Petition for Habeas Corpus issued in *Ray v. Kernan*, 17cv2634-SI from the Northern District of California. *Id.* at 64-66.

The Court DENIES Plaintiff's request. Federal Rule of Evidence 201 provides an avenue for the Court to take judicial notice of reasonably indisputable adjudicative facts. *See* Fed. R. Evid. 201. In this case, while judicial notice of the existence of these court filings is proper, if Plaintiff is seeking to conclusively establish their factual findings or legal conclusions, judicial notice is not appropriate. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice."); *Jernigan v. Cal. Dep't of Corr. & Rehab.*, No. C 09-5192 RS, 2011 U.S. Dist. LEXIS 9675, at *3 n.3 (N.D. Cal. Jan. 24, 2011) ("While judicial notice of the existence of documents filed in a court proceeding may be proper, it does not permit any assertions of fact or legal conclusions within those documents to be treated as conclusively established[.]").

In the alternative, if Plaintiff is citing these materials to support his arguments, judicial notice is unnecessary; the Court will consider the reasoning contained in these materials for whatever persuasive value they may have. *See Banneck v. HSBC Bank USA, N.A.*, No. 15-cv-02250-HSG, 2016 U.S. Dist. LEXIS 79980, at *6 (N.D. Cal. June 20, 2016) (judicial notice of orders in other cases unnecessary); *see also DeJesus Rodriguez v. Unknown-Named Disciplinary Hearings Agent*, No. 2:09-cv-02195 FCD KJN PS, 2010 U.S. Dist. LEXIS 79460, at *7 (E.D. Cal. Aug. 5, 2010) (unnecessary for plaintiff to file a separate request for judicial notice of a statute in support of his position—"[r]eference to any statutes, law or other authority should be included in the motion and/or memorandum of points and authorities that seek affirmative relief.").

### b.   Plaintiff's Objections to Defendants' Exhibits

Plaintiff objects to the admission of: (1) Exhibits A-J attached to Defendant Angulo's declaration; (2) Exhibits A-G attached to Defendant Bernal's declaration; and (3)

Exhibits A-H attached to Defendant Raybon's declaration. *See* ECF Nos. 65 at 13; 72 at 17-19.

### 1.     Family Visitation Application

Exhibit A of Defendants Angulo, Raybon, and Bernal's declarations purports to Plaintiff's Family Visiting Application. *See* ECF No. 72 at 9, 13-16.

Plaintiff objects to Exhibit A primarily based on a statement by Defendant Raybon that she entered Plaintiff's Family Visiting Application enter the prison's computer tracking system on August 15, 2017. *See* ECF No. 70-7 at 2. Plaintiff asserts that because Exhibit A shows Plaintiff's Family Visiting Application was modified by Defendant Angulo on October 11, 2017, Exhibit A cannot be a "true and accurate copy" of the document Defendant Raybon entered into the prison tracking system. *See* ECF No. 72 at 9.

In this case, the Court does not construe Defendant Raybon's statement to mean Exhibit A was the version of Plaintiff's Family Visiting Application that Defendant Raybon entered into the prison tracking system on August 15, 2017. Indeed, it is not even clear to the Court that Plaintiff's Family Visiting Application itself would have been entered. Instead, it appears Defendant Raybon would have simply logged in certain tracking information regarding this application. *See* ECF No. 70-8 at 7 ("The CC II will enter the following tracking information into the SharePoint site: Institution, Facility, Housing, CDCR#, Last Name, First Name, Date of Receipt by CC I, and Date returned to CC I for review.").

Plaintiff does otherwise object that Exhibit A **is** a copy of his Family Visiting Application—even if it may not be the version of this document as it appeared on August 15, 2017 (and the Court does not interpret it this way). For these reasons, the Court **OVERRULES** Plaintiff's objections to Exhibit A of Defendants Angulo, Raybon, and Bernal's declarations**.**

*/ / /*

*/ / /*

9

1

2.   Objections to CDCR Memorandum

2

Exhibit B of Defendants Angulo and Raybon's declarations purports to be a CDCR

3

Memorandum entitled "Sharepoint Tracking for Family Visiting (Overnight) Program for

4

Life Term Inmates," dated February 17, 2017, and signed by Kathleen Allison, who is

5

designated on the document as the Director of the Division of Adult Institutions. *See* ECF

6

Nos. 62-3 at 6-8; 62-7 at 6-8. Plaintiff objects to Exhibit B on the grounds that "no one

7

with personal knowledge who prepared this memorandum" has provided a declaration

8

swearing to its authenticity. ECF No. 65 at 15; ECF No. 72 at 9-10.

9

At the summary judgment stage, the Court need not focus on whether the form of

10

evidence is admissible. Instead, the Court focuses on the admissibility of its contents and

11

asks whether the evidence "could be presented in an admissible form at trial." *Fraser v.*

12

*Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253

13

F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not

14

necessarily have to produce evidence in a form that would be admissible at trial, as long as

15

the party satisfies the requirements of Federal Rules of Civil Procedure 56."). A "proper

16

foundation need not be established through personal knowledge but can rest on any manner

17

permitted by Federal Rule of Evidence 901(b) or 902." *Orr*, 285 F.3d at 773-74 (emphasis

18

added).

19

Here, the Court finds there are enough contextual clues on the face of Exhibit B to

20

allow the Court to conclude the document is what it purports to be. *See* Fed. R. Evid.

21

901(b)(4) (evidence may be authenticated by "appearance, contents, substance, internal

22

patterns, or other distinctive characteristics of the item, taken together with all the

23

circumstances."); *see also Johnson v. Sweeney*, 2015 U.S. Dist. LEXIS 139305, *25 (E.D.

24

Cal. October 13, 2015) ("Courts generally view objections based on authentication

25

skeptically in the absence of an indication that the document's authenticity is genuinely in

26

dispute,  and objections to prison records which are clearly what they purport to be are

27

routinely overruled under Rule 901(b)(4)[.]") (internal citations omitted).

28

Plaintiff's objections to Exhibit B on hearsay grounds (ECF No. 65 at 15) are similarly unpersuasive. The CDCR memorandum is a business record. *See* Fed. R. Evid. 801(d)(2). The fact that Defendants did not submit a Custodian of Records declaration is not fatal to its admissibility at this stage of the case. *See JL Bev. Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial."). The Court is satisfied that Exhibit B could be introduced at trial consistent with the Federal Rules of Evidence.

For these reasons, the Court **OVERRULES** Plaintiff's objections to Exhibit B of Defendants Angulo and Raybon's declarations**.**

### 3.   Objections to CDCR 115 Rules Violation Report

Exhibit C of Defendant Angulo's declaration, Exhibit B of Defendant Bernal's declaration, and Exhibit C of Defendant Raybon's declaration purports to be a CDCR Rules Violation Report. Plaintiff objects to the exhibit on the grounds that Defendants lack the personal knowledge to properly authenticate it. *See* ECF No. 65 at 16; 72 at 14-15.

Here, the Court finds the CDCR 115 Rules Violation Report is sufficiently authenticated under Federal Rule of Evidence 901(b)(4). Further, under Federal Rule of Evidence 901(b)(1), a document can be authenticated by a witness who "wrote it, signed it, used it, or saw others do so." *See* Fed. R. Evid. 901(b)(1). Here, Defendants Angulo, Bernal and Raybon's declarations all sufficiently established that they reviewed and used the CDCR 115 Rules Violation Report when making a determination on Plaintiff's Family Visiting Application. *See* ECF Nos. 62-2 at 2; 62-4 at 2; 62-6 at 2. Plaintiff's objections on the basis of "hearsay and speculation" (ECF Nos. 65 at 16, 72 at 10) are unpersuasive for the same reasons stated above.[5] *See JL Bev. Co., LLC.* 828 F.3d at 1110.

---

[5] Plaintiff also makes a conclusory objection that the exhibit is "internally inconsistent" without explanation. ECF No. 65 at 16. The Court declines to scrutinize this objection.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For these reasons, the Court **OVERRULES** Plaintiff's objections to Exhibit C of Defendant Angulo's declaration, Exhibit B of Defendant Bernal's declaration, and Exhibit C of Defendant Raybon's declaration.**[6]**

### 4.   Objections to Copies of California Statutory Provisions

Exhibits D-H of Defendant Angulo's declaration, Exhibits C-G of Defendant Bernal's declaration, and Exhibits D-H of Defendant Raybon's declaration purport to be copies of various provisions within Title 15 of the California Code of Regulations. The Court finds it unnecessary to determine whether these copies were properly authenticated. The Court already has access to the provisions Defendants cite to. Thus, the Court will consider these materials for whatever persuasive value they may have.[7]

### 5.   Objections to Daily Program Status Report

Exhibit J of Defendant Angulo's declaration purports to be CDCR 3022 form entitled "Daily Program Status Report A – Plan of Operation/Staff & Inmate Notification" and a memorandum entitled "Modified Yard Schedule—Modification Cent-Inst-17-007" dated September 11, 2017.  The Court finds that there are enough contextual clues on the face of these documents to allow the Court to conclude it is what it purports to be. *See* Fed. R. Evid. 901(b)(4). For these reasons, the Court **OVERRULES** Plaintiff's objections to Exhibit J of Defendant Angulo's declaration.

---

[6] To the extent Plaintiff is objecting to Defendants' declaration statements with respect to the Rules Violation Report (ECF No. 65 at 16, 18-20; 72 at 11), Defendants are entitled to testify as to their review of Plaintiff's Central File and swear as to its contents for this litigation. *See e.g., Goldstein v. Sillen*, No. CV 07-5958 SBA (PR), 2011 U.S. Dist. LEXIS 35906, at *15 (N.D. Cal. Mar. 31, 2011).

[7] To the extent Plaintiff objects to Defendants' declaration statements with respect to these provisions as improper legal conclusion (ECF No. 65 at 16-17)—"statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not **facts** and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context." *Burch v. Regents of the Univ. of Cal.,* 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (emphasis in original).

### c.     Plaintiff's Objections Under The "Sham Affidavit" Rule

Plaintiff requests that the Court strike all statements made in Defendants Angulo, Bernal, and Raybon's declarations directed to: (1) Title 15 of the California Code of Regulations Sections 3016(d) and 3000; and (2) "all references to CDCR guidelines" as it applies to "distribution of controlled substance, narcotics[.]" ECF No. 65 at 19. Plaintiff argues Defendants' statements made in their declarations relating to these provisions contradict their responses to Plaintiff's discovery requests and should therefore be disregarded under the "sham affidavit" rule. *Id.* Specifically, Plaintiff points to: (1) Defendants' response to Plaintiff's Request for Admission No. 29; (2) Defendant Angulo's supplemental response to Plaintiff's Interrogatory No. 17; and (3) Defendant Raybon's supplemental response to Plaintiff's Interrogatory No. 11. *See* ECF No. 65 at 26-27.

Under the "sham affidavit" rule, a party cannot create a triable issue of fact by introducing an affidavit that contradicts prior discovery responses. *See Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 942 (N.D. Cal. 2016) ("[T]he sham affidavit rule permits a trial court to disregard declarations by a party which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy)[.]"),

The Ninth Circuit has stated however that the "sham affidavit" rule "'should be applied with caution' because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations omitted). "In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'" *Id.* (citations omitted).

Guided by this precedent, the Court does not find the imposition of the "sham affidavit" rule appropriate here. Centrally, the Court is unable to determine how Defendant's declaration statements are clearly and unambiguously inconsistent with their

discovery responses. In Defendants' response to Plaintiff's Request for Admission No. 29, Defendants admit the November 24, 1996 Rules Violation Report "does not indicate" Title 15 Section 3016 subdivision (c). *See* ECF No. 58 at 36-37. In Defendant Angulo's supplemental response to Plaintiff's Interrogatory No. 17 and Defendant Raybon's supplemental response to Plaintiff's Interrogatory No. 11, both respond that they do not contend Plaintiff was found guilty of for distribution, but instead that Plaintiff was found guilty of a conspiracy offense. *See* ECF Nos. 65 at 39, 43. Likewise, in Defendants' declarations, Defendants state Plaintiff was found guilty of a conspiracy offense. *See* ECF Nos. 62-2 at 3; 62-4 at 3; 62-6 at 3. The declarations also clarify that subdivision (c) of Section 3016 did not exist in 1996 when the Rules Violation Report was issued. *Id.* The Court does not find these statements inconsistent with Defendants' discovery responses.

For these reasons, the Court **DENIES** Plaintiff's request to strike portions of Defendants' declarations under the "sham affidavit" rule.

## III. Cross-Motions for Summary Judgment

Plaintiff seeks summary judgment as to his First Amendment retaliation and Fourteenth Amendment equal protection claims against all named Defendants. *See* ECF No. 58.

Defendants Angulo, Raybon, and Bernal argue they are likewise entitled to judgment as a matter of law because they evidence reveals no genuine dispute as to whether they retaliated or discriminated against him. *See* ECF No. 70. Alternatively, Defendants argue they are entitled to qualified immunity. *See id.*

### a. Standard of Review

Any party may move for summary judgment, and the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th

Cir. 2015); *Johnson v. Poway Unified Sch. Dist*., 658 F.3d 954, 960 (9th Cir. 2011). The Court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences." *Flores*, 824 F.3d at 897 (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008) (citation omitted)).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. FED. R. CIV. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist*., 237 F.3d 1026, 1031 (9th Cir. 2001).

Because Plaintiff bears the burden of proof at trial, to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun,* 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

/ / /

### b.   Retaliation Claims

#### 1.   Standard of Review

"Prisoners have a First Amendment right to file grievances against prison officials," *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012), and prison officials "may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct." *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).

Because courts must also defer to the "reasonable decisions of prison officials," *id.* (citing *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)), "[w]hen a prisoner claims retaliation, [courts] strike a balance by requiring him to show that (1) 'a state actor took some adverse action … (2) because of (3) [the] prisoner's protected conduct, … that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Id.* (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted)); *accord Watison*, 668 F.3d at 1114-15; *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Brodheim*, 584 F.3d at 1269.

#### 2.   Discussion

Both Plaintiff, as well as Defendants Angulo, Raybon, and Bernal, claim there is no genuine dispute as to Plaintiff's claims of retaliation, and that therefore, each is entitled to judgment in his or her favor as a matter of law. *See* ECF No. 58 at 7-13; ECF No. 70 at 8-21.

As an initial matter, Defendants do not dispute that Plaintiff engaged in protected conduct. Rather, Defendants argue that they had a legitimate penological reason to deny Plaintiff's request for family visitation. Specifically, Defendants argue that Plaintiff was "disqualified from having [family] visits under the 2017 Title 15 of the California Code of

Regulations." (Defs.' Memo. of P&As in Opposition[8] to Pl.'s Mtn. Summ. J. [hereinafter Defs.' Opp'n], ECF No. 62 at 6.) Defendants further maintain that the denial of Plaintiff's "Family Visiting Application related to the legitimate penological purpose in preventing the introduction of drugs into the prison system." (*Id.* at 19.)

It is undisputed that Plaintiff submitted a "Family Visiting Application" on July 11, 2017. (Pl.'s SSUF, ECF No. 58 at 20, No. 3; Angulo Decl., ECF No. 62-3, Ex. A, Family Visiting Application, CDCR Form 1046 dated July 11, 2017.) On page one of this application, there is a handwritten notation "approved visitor" and what appears to be a signature underneath this notation which is also dated August 15, 2017. (Angulo Decl., Ex. A, ECF No. 62-3 at 3.) On page two of this application, it appears as though the box for "this visit is approved" was initially checked but then struck. (*Id.* at ECF 62-3 at 4.) The box "[t]his visit is denied for one or more if the following reasons" is also checked and the box "other" is checked and there is a written notation "[r]ead down below!" (*Id.*) None of the Defendants offer any explanation in their declarations as to why this visitation request appears to have initially been granted.

Underneath the checked boxes there is a handwritten notation "I/O PC 187 [n]o family member or minor in the circumstances, reviewed." (*Id.*) Underneath this entry, is another handwritten notation "[c]oncur with CCI" followed by what Defendant Raybon declares is her signature but this signature is not dated. (*Id.*) Below Defendant Raybon's signature is a handwritten note "found guilty of RVR for conspiracy to traffick [sic] narcotics onto institutional grounds." (*Id.*) Notably, nowhere in Defendant Raybon's Declaration in Opposition to Plaintiff's Motion or in support of Defendants' Motion does she indicate what date she reviewed or signed this application or purportedly made any of the handwritten notations. The application itself only provides a signature line for

---

[8] As stated above, Defendants' Opposition to Plaintiff's Motion for Summary Judgment is virtually identical to their own Motion for Summary Judgment. Therefore, for clarity purposes, the Court will cite to Defendants' Opposition.

"Counselor's Signature" and "Facility Captain's Signature." (*Id.*)  Defendant Raybon did not enter her signature on either of those lines.

It is undisputed that Plaintiff was issued an RVR on November 24, 1996 in which he was charged with "conspiracy to trafficking narcotics onto institutional grounds" in violation of Title 15 of the California Code of Regulations. Section 3016.  (Angulo Decl., ECF No. 70-6 at 6, Ex. B.; Pl's SSUF, ECF No. 58 at 24, No. 19.)  Cal. Code Regs., tit. 15 § 3086 (a) (eff. 2011)).

In 1996, Cal. Code Regs., tit. 15 § 3016(a) was as follows:

> "Inmates may not use, possess, exchange, manufacture, or have under their control any substance or paraphernalia related to use of such substance, which produces intoxication, stimulation or depression, or is a medication controlled by the institution, except as specifically authorized by the facility's health care staff."

*Id.*  Angulo Decl. ECF No. 70-6 Ex. D. 28

Over twenty years later, in 2017, Section 3016 was revised, and sections were added. Specifically, Section 3016(a) stated:

> "Inmates shall not inhale, ingest, inject, or otherwise introduce into their body; use, possess, manufacture, or have under their control any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff."

Cal. Code Regs., tit. 15 § 3016(a) (a) (eff. 2017)); Angulo Decl. ECF No. 70-6 Ex. E at 30.

In addition, section 3016 was revised in 2017 to include another section which stated that "[i]nmates shall not distribute, as defined by section 3000, any controlled substance." Cal. Code Regs., tit. 15 § 3016(c) (eff. 2017); Angulo Decl. ECF No. 70-6 at 30, Ex. E.

Cal. Code Regs., tit. 15 § 3000 contains a definition for "distribution" which is now defined as:

> "The sale or unlawful dispersing, by any inmate or parolee, of any controlled substance; or the solicitation of or *conspiring with others* in arranging for, the introduction of controlled substance into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution."

*Id.* (emphasis added); Angulo Decl. ECF No. 70-6 Ex. E. at 32.

At the time Plaintiff applied for family visitation in 2017, Section 3177 provided that inmates like Plaintiff who were serving a sentence of life without the possibility of parole "shall not be permitted" family visitation if they were "guilty of narcotics distribution while incarcerated in a state prison."   Cal. Code Regs., tit. 15 § Section 3177(b)(2).   It is undisputed that at the time Plaintiff received the disciplinary conviction in 1996, he was found guilty of a *conspiracy* to distribute narcotics but was not actually found guilty of being in possession of or distributing narcotics.  (*See* Pl.'s SSUF, ECF No. 58 at 20, Nos. 11, 12; Defs.' SSUF, ECF No. 62-1, No. 13.)   In addition, it is undisputed that Defendants applied the more recent version of § 3016 in 2017 which included a reference to § 3000 that broadened the definition of "distribution" to include conspiracy which was not included in the 1996 version of the applicable code sections under which Plaintiff was convicted when they denied his request for family visitation.  (Pl.'s SSUF, ECF No. 58 at 20, No. 19; Defs.' SSUF, ECF No. 62-1 at 6, No. 21.)

Defendants argue that their "evidence shows that their denial of Perkin's Family Visiting Application was based on legitimate penological reasoning because the CDCR regulations mandated that they deny it." (Defs.' Opp'n, ECF No. 62 at 17.)  They also maintain that they denied Plaintiff's request because the guilty finding following his disciplinary hearing more than twenty years ago in "Rules Violation Report Log. No. 4A-9611-047 was, under 2017 Title 15 Regulations, a disqualifying infraction for family visits" and they had "**no discretion**" to find otherwise." (*Id.*) (emphasis in original.)

Here, the question is whether there is a genuine issue of material fact as to whether Defendants took this adverse action against Plaintiff out of "retaliatory animus" to "silence and punish" Plaintiff.  *Shepard*, 840 F.3d at 689-91.   In order to establish causation, Plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [Defendants'] intent" in denying him family visitation.  *Brodheim*, 584 F.3d at 1271 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

Here, there is no explanation provided by Defendants as to why it appears that Plaintiff's request was initially granted. There are handwritten notations and signatures on the family visitation form that are not dated. Plaintiff maintains that decision to deny his request was made when he claims he told Defendant Angulo that he would file a grievance against him due to Defendant Angulo's "dilatory actions and dereliction of duty." (Pl.'s MSJ, ECF No. 58 at 3.) The Ninth Circuit has held that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289.

Defendants maintain that they had no choice but to deny Plaintiff's visitation request by applying the current version of a regulation that Plaintiff was found guilty of twenty year prior to his application. In fact, the specific section Defendants' rely on, § 3016(c), to deny Plaintiff's request *did not exist* at the time Plaintiff was found guilty of violating § 3016 in 1996. Defendants maintain they had no discretion but do not point to anywhere in the regulations where they were required to hold Plaintiff to account for a version of a regulation that did not exist at the time.

While Defendants version of events "might convince a jury that [they] bore no retaliatory animus" when they denied Plaintiff's visitation application, after apparently granting the application, a trier of fact could also find that the denial was "pretextual" and a "ruse to silence and punish" Plaintiff for having exercised his constitutional rights. *Shepard*, 840 F.3d at 690-91 (citing *Bruce*, 351 F.3d at 1289). Defendants argue that their "denial of the Family Visiting Application related to a legitimate penological purpose in preventing the introduction of drugs into the prison system." (Defs.' Opp'n, ECF No. 62 at 19.) Plaintiff has not been charged, or convicted of, bringing drugs into the prison system. Plaintiff was charged with conspiracy to violate a regulation written to prevent drugs from being entered into the prison system but to use this offense to deny him visitation twenty-one years later, raises the question that this denial was "pretextual." There is also a question of fact as to whether Plaintiff was initially granted visitation rights

20

only to have them denied after he allegedly threatened to file complaints regarding his claim that Defendants were unnecessary delaying their processing of his application.

The Ninth Circuit has held that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). Resolution of these issues is solely within the province of a jury—for courts ruling on motions for summary judgment may not engage in "[c]redibility determinations" or "weigh[] [the] evidence." *Anderson*, 477 U.S. at 255; *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Accordingly, because there are genuine triable issues of material fact as to whether the motive for denying Plaintiff's family visitation was retaliatory, both Plaintiff and Defendants' Motions for Summary Judgment as to Plaintiff's retaliation claim are DENIED.

### c. Equal Protection claims

#### 1. Standard of Review

The Fourteenth Amendment's Equal Protection Clause requires that persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439; *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).

An equal protection claim can be established if there are facts sufficient to plausibly show Defendants intentionally treated similarly situated inmates differently from Plaintiff without a rational basis for doing so. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). An equal protection claim under this "class of one" theory, must show that: (1) Plaintiff is a member of an identifiable class; (2) he was intentionally treated

differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Nurre v. Whitehead*, 580 F.3d 1087, 1098 (9th Cir. 2009) (citing *Village of Willowbrook*, 528 U.S. at 564). He must further allege discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976); *Serrano*, 345 F.3d at 1081-82; *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).

## 2.   Discussion

Defendants argue that while Plaintiff claims he was discriminated against, there is "no proof that Defendants granted family visiting privileges to other inmates who were found guilty of conspiring to traffic narcotics." (Defs.' Opp'n, ECF No. 62 at 20.)  In support of this argument, Defendants submit their declarations in which they attest that the "never recommended that other inmates who had the same or similar infractions be approved for family visitations." (Defs. SSUF, ECF No. 62-1 at 12, No. 54; Angulo Decl., ECF No. 62-2 at ¶ 16; Raybon Decl., ECF No. 62-6 at ¶ 13; Bernal Decl. 62-4 at ¶ 12.)

In response, Plaintiff argues that Defendants should be held liable "for discrimination against Plaintiff when they personally participated in the denial" of his family visitation application. (Pl.'s Opp'n, ECF No. 72 at 24.)  In Plaintiff's Motion, he argues that that Defendants "denied Plaintiff a benefit that they have granted to other inmates equally situated as Plaintiff." (Pl.'s MSJ, ECF No. 58 at 5.)  However, Plaintiff fails to offer any evidence in either his moving papers or his Opposition to Defendants' Motion to dispute Defendants' testimony that they did not treat Plaintiff differently from any other inmate.  Plaintiff offers no evidence to identify inmates to whom he was purportedly similarly situated.  Plaintiff must offer evidence in a "class of one" equal protection claim that he was irrationally "singled out" from a group of similarly situated individuals. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008).  Plaintiff has failed to do so.

Accordingly, the Court finds that Plaintiff cannot establish a genuine issue of material fact to demonstrate the existence of a group that he was "similarly situated" and therefore, GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's equal

protection claim and DENIES Plaintiff's Motion for Summary Judgment as to his equal protection claim.

### d.     Qualified Immunity

Defendants move for summary judgment on qualified immunity grounds. Specifically, Defendants argue that "[r]easonable correctional officers in Defendants' position would believe that their denial of [Plaintiff's] Family Visiting Application proper based on his Rules Violation Report and the applicable 2017 Title 15 of the California Code of Regulations."  (Defs.' P&As, ECF No. 70 at 21.)

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendants conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has since held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  Similarly, if the Court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation.  *Pearson*, 555 U.S. at 236-37.

3:18-CV-0850-DMS-LL

The Court has found that there is no genuine dispute of material fact as regard to Plaintiff's equal protection claim and thus, no qualified immunity analysis is necessary for this claim. However, genuine disputes of material fact exist as to whether Defendants retaliated against Plaintiff in violation of his First Amendment rights. If Plaintiff's claims are presumed true, this evidence could establish that Defendants retaliated against him. *See Jeffers*, 267 F.3d at 907 (citing *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998)). Thus, "the next . . . step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. However, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons,* __ U.S. __, 139 S.Ct. 500, 503 (2019). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinsela v. Hughes*, 584 U.S. __, 138 S.Ct. 1148, 1152 (2018).

Defendants argue that they "should be entitled to rely on the assumption" that the 2017 regulations were "drafted in compliance with constitutional standards." (Defs.' Mot., ECF No. 70 at 22.) However, the issue is not the constitutionality of the language of these regulations but rather the purported pretextual use of these regulations by Defendants to retaliate against Plaintiff. In 2003, well before the actions giving rise to this action, the Ninth Circuit held that "prison officials may not defeat a retaliation claim … simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289. In 2016, also a date before the events giving rise to this action occurred, the Ninth Circuit in *Shepard* found "*Bruce* clearly established that prison officials may not abuse a valid procedure 'as a cover or a ruse to silence and punish' an inmate." *Shepard*, 840 F.3d at 694 (quoting *Bruce*, 351 F.3d at 1289)). Accordingly, the Court finds that Plaintiff's right to be free from retaliation was "clearly

established" at the time the events in this action occurred such that it was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202.

In viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has sufficiently produced evidence to satisfy both prongs of the qualified immunity analysis as to his retaliation claims against Defendants.  Therefore, Defendants Motion for Summary Judgment on qualified immunity grounds as to Plaintiff's retaliation claim is DENIED.

## IV.    Conclusion and Order

For all the reasons explained, the Court:

1)    **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 58);

2)    **DENIES** Defendants' Motion for Summary Judgment (ECF No. 70) as to Plaintiff's retaliation claim;

3)    **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 70) as to Plaintiff's Fourteenth Amendment equal protection claims; and

4)    **DENIES** Defendants' Motion for Summary Judgment (ECF No. 70) on qualified immunity grounds.

**IT IS SO ORDERED**.

Dated:    March 12, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court

3:18-CV-0850-DMS-LL